**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHERINE BERNHARDT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CITY OF ST. LOUIS, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES**

**Introduction**

1.       From the million dollar works of Banksy to the amateur murals commemorating the life of George Floyd, public murals have become an increasingly important medium for expressing political and social messages.

2.       Plaintiff Katherine Bernhardt is a renowned contemporary artist whose work has been exhibited in galleries and museums around the world. She often incorporates spray paint in a manner that is similar to graffiti in her artwork.

3.       In this action, brought pursuant to 42 U.S.C. § 1983, the First Amendment to the United States Constitution, the Fourteenth Amendment Due Process Clause, the Visual Artists Rights Act of 1990 ("VARA"), and the common law of Missouri, Ms. Bernhardt seeks judgment against Defendant City of St. Louis for entering her private property without notice and destroying a mural she painted in support of the Black Lives Matter movement (the "Mural").

4.       Defendant destroyed the Mural pursuant to Defendant's broad prohibition on "graffiti," codified as St. Louis, Mo. Mun. Code § 15.77 *et seq*. (the "Graffiti Prohibition").

5.     The Graffiti Prohibition violates Ms. Bernhardt's First Amendment rights by requiring the destruction of artwork on private property, as well as by prohibiting Ms. Bernhardt from creating mural art, and banning mural art as a medium of expression.

6.     The Graffiti Prohibition also violates Ms. Bernhardt's due process rights by allowing the government to destroy her private property without providing actual notice or any opportunity to be heard.

7.     By destroying the Mural, Defendant also violated Ms. Bernhardt's statutory right of integrity under VARA, 17 U.S.C. § 106A, and tortiously damaged Ms. Bernhardt's property.

8.     Ms. Bernhardt respectfully seeks declaratory and injunctive relief, as well as actual damages.

## Jurisdiction and Venue

9.     This action arises under the First and Fourteenth Amendments of the United States Constitution, federal statutory law, and state law. Ms. Bernhardt brings these claims pursuant to 42 U.S.C. § 1983, 17 U.S.C. § 106A, and Missouri state law.

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201-2202.

11.     This Court has supplemental jurisdiction over the related state law claim pursuant to 28 U.S.C. § 1367(a) because that claim forms part of the same case or controversy.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to this claim occurred in this District.

## Parties

13.     Plaintiff Katherine Bernhardt is a resident of Clayton, Missouri.

14.     Ms. Bernhardt is a world-renowned artist, who frequently uses spray paint in her artwork. Ms. Bernhardt is also the sole owner of Dragon Crab and Turtle, LLC, which, at all times relevant to this complaint, owned the building located at 2814 Locust Street, St. Louis MO, 63103 (the "Building") where Ms. Bernhardt painted the Mural.

15.     Defendant City of St. Louis is a municipal corporation and political subdivision of the State of Missouri.

## Factual Allegations

### A. The Artist

16.     Ms. Bernhardt is a renowned contemporary artist, whose eclectic style has achieved international recognition and commercial success.

17.     Describing this style, an art critic writing for *GQ* observed that "[a] typical Bernhardt might measure up to 10 feet long, its surface swimming with spray-painted oddities . . . ."[1]

18.     Galleries and exhibitions around the world in New York, London, Paris, Dubai, Tokyo, and Brussels have featured Ms. Bernhardt's art. Ms. Bernhardt has also worked on prominent collaboration projects. For instance, Walt Disney featured one of her spray-painted wall murals in its New York exhibition celebrating the 90th anniversary of Mickey Mouse.[2]

19.     Art collectors have paid six figure sums for Ms. Bernhardt's art, such as her spray-painted piece, "*Pink Panther + Instagram + Orchids*" as displayed in Figure 1:

---

[1] Scott Indrisek, *Paint It Loud: Meet Katherine Bernhradt, the so-called "female bad-boy" of contemporary art.*, GQ (Aug. 29, 2019), https://www.gq.com/story/katherine-bernhardt-will-paint-it-loud.

[2] Alison Brewer, *Artist Katherine Bernhardt Reveals Mickey Mouse Mural for Icon's 90th Anniversary*, The Hollywood Reporter (Nov. 6, 2018), https://www.hollywoodreporter.com/news/katherine-bernhardts-mickey-mouse-mural-1158465.



*Figure 1*

## B.  The Mural

20.     On June 21, 2020, Ms. Bernhardt painted the Mural onto detachable panels, coated

with Gesso,[3] outside of her Building.

21.     Ms. Bernhardt painted the Mural, depicted below in Figure 2, to show support for

the ongoing Black Lives Matter protests occurring in the wake of the death of George Floyd.

---

[3] Artists apply Gesso to a canvas as a base for other materials.



*Figure 2*

22.     The Mural had value as a work of art painted by Ms. Bernhardt at the time of its

destruction.

**C.  Defendant's Destruction of the Mural**

23.     On July 17, 2020, employees and/or agents of Defendant trespassed and entered

Ms. Bernhardt's private property and destroyed the Mural by covering it up with white paint, as

shown below in Figure 3.



*Figure 3*

24.     Ms. Bernhardt did not receive notice of Defendant's intention to destroy the Mural prior to its destruction.

25.     Ms. Bernhardt later learned that, prior to the destruction of the Mural, Defendant City of St. Louis had determined the Mural was a nuisance.

26.     Ms. Bernhardt was not made aware of this determination before Defendant destroyed the Mural.

27.     Even if Ms. Bernhardt had received notice of this determination, Defendant did not provide any procedure for Ms. Bernhardt to challenge this determination.

28.     Following the destruction of the Mural, Ms. Bernhardt learned Operation Brightside, an agency of the City,[4] had sent one, non-certified letter ("Letter") to an address she maintains in Brooklyn, New York to serve as purported notice.

**D.  The Graffiti Prohibition**

29.     Defendant destroyed the Mural pursuant to the Graffiti Prohibition.

30.     The Graffiti Prohibition makes it "unlawful for any person to place graffiti upon any public or private property within the City of St. Louis." St. Louis, Mo. Mun. Code § 15.77.030(a). *See* Exhibit 1, attached hereto.

31.     A person also may not "maintain" graffiti that has been placed upon their property, when the graffiti is visible from a public street, alley, right-of-way, or other public property. St. Louis, Mo. Mun. Code § 15.77.030(b). *See* Ex. 1.

32.     Any "graffiti" prohibited under the ordinance is "declared a public nuisance." St. Louis, Mo. Mun. Code § 15.77.030(c). *See* Ex. 1.

33.     "Graffiti" prohibited under the ordinance broadly includes "any unauthorized inscription, word, figure, picture, or design that is sprayed, marked, posted, pasted or otherwise affixed, drawn, or painted on any surface of public or private property. [But] Graffiti [does not include] a sign lawfully erected and maintained as required by other ordinances." St. Louis, Mo. Mun. Code § 15.77.010. *See* Ex. 1.

34.     Pursuant to the Graffiti Prohibition, if "graffiti" is found on private property, notice is sent to the property owner, stating that "the graffiti *must be* removed." St. Louis, Mo. Mun. Code § 15.77.040(B)(5) (emphasis added). *See* Ex. 1.

---

[4] Operation Brightside operates as a division of the City's Department of Parks, Recreation and Forestry. The City and Operation Brightside, the agency, also coordinate with and work in concert with Operation Brightside, Inc., a non-profit, pursuant to a Cooperation Agreement.

35.     Notice is sent via mail to the property owner. The notice need only be sent "first class postage prepaid" and, if directed to an address in the City of St. Louis, is "deemed served seventy-two (72) hours after the mailing of such notice.  If sent to an out-of-town address, it is "deemed served at the end of such period after the mailing thereof as in the ordinary course of delivery of mail would be required for delivery of such notice." St. Louis, Mo. Mun. Code § 15.77.040(B)(2)-(3).  *See* Ex. 1.

36.     Defendant does not make any further attempt to notify the property owner or to confirm that notice was actually received.

37.     The property owner must begin removal "within two (2) days after such notice is served and be completed within five (5) days after such notice is served." St. Louis, Mo. Mun. Code § 15.77.040(B)(5). *See* Ex. 1.

38.     If the property owner does not remove the "graffiti," the ordinance states the Forestry Commissioner or such entity designated by them is authorized to enter the property and remove the graffiti. St. Louis, Mo. Mun. Code § 15.77.040(B)(6). *See* Ex. 1.

39.     Under the Graffiti Prohibition, any person employed by, or contracted with, the City for graffiti removal maintains the right of entry upon any premises. St. Louis, Mo. Mun. Code § 15.77.060. *See* Ex. 1.

40.     A person who violates any provision of the Graffiti Prohibition is subject to criminal penalties, up to and including imprisonment and monetary fines. St. Louis, Mo. Mun. Code § 15.77.090. *See* Ex. 1.

41.     If Defendant removes graffiti from an individual's private property, the property owner is liable for the cost of the removal. Failure to pay such costs can result in a lien on the individual's property. St. Louis, Mo. Mun. Code § 15.77.050. *See* Ex. 1.

## Causes of Action

### COUNT I –  St. Louis Mun. Code § 15.77.030
*Violation of the First and Fourteenth Amendments to the United States Constitution*
42 U.S.C. § 1983

42.     The allegations set forth above are incorporated as if set forth herein verbatim.

43.     Ms. Bernhardt engaged in constitutionally protected speech and/or expressive conduct by painting the Mural.

44.     The Graffiti Prohibition directly regulates Ms. Bernhardt's ability to engage in such protected speech and/or expressive conduct by prohibiting works of art on private property and requiring the destruction of works of art on private property.

45.     The Graffiti Prohibition infringes upon Ms. Bernhardt's right to Free Speech under the First Amendment, incorporated through the Fourteenth Amendment, because it burdens substantially more speech than is necessary for Defendant City of St. Louis to achieve any legitimate interest.

46.     The Graffiti Prohibition is not narrowly tailored, nor does it leave open ample alternative channels for Ms. Bernhardt to communicate.

### COUNT II -  St. Louis, Mo. Mun. Code § 15.77.030
*Violation the First Amendment As Applied to Defendant's Destruction of the Mural*
42 U.S.C. § 1983

47.     Ms. Bernhardt incorporates the allegations set forth above as if set forth herein verbatim.

48.     A statute or ordinance violates the First Amendment when it is unconstitutionally applied to the particular facts of a case. *Phelps-Roper v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017).

49.     Additionally, a statute or ordinance violates the First Amendment if it bans an entire medium of expression. *City of Ladue v. Gilleo*, 512 U.S. 43, 55, 56-57 (1994). This is particularly true if the statute or ordinance bans a common medium of expression and expression on one's private property. *Id*.

50.     As applied, the Graffiti Prohibition banned Ms. Bernhardt from creating and maintaining mural artwork on her private property.

51.     Moreover, the Graffiti Prohibition entirely bans works of "graffiti" art on private property, which are a common medium of expression.

52.     As a result, the Graffiti Prohibition violates the First Amendment as applied to the Mural because it prohibited Ms. Bernhardt from creating and maintaining a work of art on her private property, while also entirely banning a common medium of expression.

**COUNT III – St. Louis Mun. Code § 15.77.040**
*Facial Violation of the Fourteenth Amendment Due Process Clause*
42 U.S.C. § 1983

53.     Ms. Bernhardt incorporates the allegations set forth above as if set forth herein verbatim.

54.     The Graffiti Prohibition does not comply with the Due Process Clause of the Fourteenth Amendment because it provides insufficient notice to property owners before depriving them of their property.

55.     Sending property owners a one-time, non-certified notice of the "nuisance" and deeming it received after an unspecified time period does not amount to constitutionally sufficient notice.

56.     Furthermore, even if such notice is received, both the ordinance and notice fail to contain any procedure for property owners to contest the City's determination regarding the presence of graffiti.

57.     The Graffiti Prohibition establishes no method through which property owners may challenge the finding of a "graffiti nuisance" on their property.

58.     For over a century, the Supreme Court has considered property to be "more than the mere thing which a person owns" and inclusive of "the right to acquire, use, and dispose of [that property]." *Buchanan v. Warley*, 245 U.S. 60, 74 (1917).

59.     The Fourteenth Amendment of the United States Constitution requires that "No state shall . . . deprive any person of life, liberty, or property, without due process of law."

60.     Put simply, due process requires notice and an opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976).

61.     Because the notice requirements of the Graffiti Prohibition are insufficient to advise property owners before depriving them of their property and because the ordinance establishes no opportunity for the property owner to be heard in regards to the determination that their property contained a "graffiti nuisance," it does not afford sufficient process prior to the destruction of property.

### COUNT IV –  St. Louis Mun. Code § 15.77.040
*Violation of the Fourteenth Amendment Due Process Clause As Applied
to the Destruction of the Mural*
42 U.S.C. § 1983

62.     Ms. Bernhardt incorporates the allegations set forth above as if set forth herein verbatim.

63.     Ms. Bernhardt did not receive any notice prior to the Mural's removal because such notice was sent to her New York address and she was in Missouri at the time it was sent.

64.     Without her knowledge, and without any way to challenge the action, Ms. Bernhardt's mural was destroyed, amounting to a violation of Ms. Bernhardt's procedural due process rights.

65.     Because the Graffiti Prohibition's notice requirements proved inadequate to Ms. Bernhardt and did not establish a way for Ms. Bernhardt to challenge the determination that her property contained a "graffiti nuisance," Ms. Bernhardt was not afforded sufficient procedural processes prior to the destruction of the Mural.

**COUNT V – Defendant's Destruction of the Mural**
*Violation of Ms. Bernhardt's Right of Integrity Under the*
*Visual Artists Rights Act of 1990, 17 U.S.C. § 106A*

66.     Ms. Bernhardt incorporates the allegations set forth above as if set forth herein verbatim.

67.     VARA prohibits the intentional destruction of a work of visual art of recognized stature. 17 U.S.C. § 106A(a)(3)(a).

68.     The Mural is a work of visual art because it was a painting which existed in a single copy. 17 § U.S.C. 101.

69.     The Mural is a work of recognized stature due to its recognition on social media and in the press, the recognition of Ms. Bernhardt's particular style reflected in the Mural, and Ms. Bernhardt's prominent reputation as an artist. *See Martin v. City of Indianapolis*, 982 F. Supp. 625, 631 (S.D. Ind. 1997), *aff'd* 192 F.3d 608 (7th Cir. 1999) (describing the recognized stature element as merely designed to prevent "nuisance lawsuits, such as the destruction of a five-year-old's fingerpainting by her class mate") (internal citations omitted).

70.     Defendant intentionally destroyed the Mural when its employees and agents trespassed and entered upon Ms. Bernhardt's property and whitewashed the artwork.

**COUNT VI – Defendant's Destruction of the Mural**
*Tortious Injury to Ms. Bernhardt's Property Under Missouri State Law*

71.     Ms. Bernhardt incorporates the allegations set forth above as if set forth herein verbatim.

72.     By painting over Ms. Bernhardt's mural, Defendant destroyed a valuable work of art owned and possessed by Ms. Bernhardt.

73.     The Mural was created by Ms. Bernhardt.

74.     The Mural was secured to a building owned by Ms. Bernhardt and did not present a threat to public safety.

75.     Defendant trespassed and entered Ms. Bernhardt's property intending to remove the Mural.

76.     Defendant failed to provide proper notice to Ms. Bernhardt of its intended act.

77.     Defendant painted over the Mural, destroying the work of art.

78.     Defendant's actions were carried out with actual intent to destroy Ms. Bernhardt's property.

79.     Defendant's actions were carried out with indifference to Ms. Bernhardt's rights to possess and enjoy her Mural.

80.     By neglecting to provide proper notice prior to the destruction of the Mural, Defendant failed to exercise reasonable care.

81.     As a direct result of Defendant's actions, Ms. Bernhardt suffered damages, including a loss in monetary value of the Mural.

82.     Defendant intentionally and negligently caused a tortious injury to Ms. Bernhardt.

83.     Defendant City of St. Louis has obtained self-insurance from the Public Facilities Protection Corporation ("PFPC"). The 2019 Comprehensive Annual Financial Report of the City

of St. Louis states that the "PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters."

84.     By possessing such insurance or self-insurance, Defendant City of St. Louis has waived sovereign immunity, pursuant to § 537.610.1, RSMo. This Court has held, in considering claims against the City of St. Louis, that "a complaint's allegation that the City self-insures through the PFPC to insure the City against 'all claims' was sufficient to withstand the City's motion to dismiss state tort law claims on sovereign immunity grounds." *Laney v. City of St. Louis*, No. 4:18 CV 1575 CDP, 2019 WL 2423308, at *7 (E.D. Mo June 10, 2019) (citing *Fortenberry v. City of St. Louis*, No. 4:18 CV 01937JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019)).

85.     Additionally, upon information and belief, Defendant City of St. Louis has waived sovereign immunity by insuring itself through Operation Brightside, Inc.'s policy. *See* Exhibit 2, Ordinance establishing Operation Brightside, Board Bill No 338 CS, Page 4 of 5 (Jan. 9, 2009) (codified as St. Louis, Mo. Mun. Code § 22.05 *et seq.*) ("The Corporation shall maintain its corporate status … and any existing liability insurance policies, to which it shall add the City its officers and employees as additional insureds.").

86.     Municipalities in Missouri are also not shielded by sovereign immunity when they are performing proprietary rather than governmental functions. *Crouch v. City of Kansas City*, 444 S.W.3d 517, 521 (Mo. Ct. App. 2014).  Proprietary functions are "those benefiting or profiting the Municipality in its corporate capacity, in that they benefit or provide services or conveniences to a Municipality's own citizens." *Crouch*, 444 S.W.3d at 523 (quoting *Kunzie v. City of Olivette*, 184 S.W.3d 570 (Mo. 2006) and *Bennartz v. City of Columbia*, 300 S.W.3d 251 (Mo. Ct. App. 2009)) (internal quotations omitted).

87.     Further, Missouri courts have held that the destruction of property may be a proprietary act if it is done without necessity when the property does not present a public danger. *Larabee v. City of Kansas City*, 697 S.W.2d 177, 180. *See also Rothenhoefer v. City of St. Louis*, 410 S.W.2d 73, 75 (Mo. 1967). Because the Mural was not a danger to the public, and because the destruction of the Mural was not necessary, Defendant City of St. Louis was performing a proprietary function by destroying the Mural.

88.     Because Defendant City of St. Louis was performing a proprietary function, Defendant is not shielded by sovereign immunity.

### Prayer for Relief

89.     WHEREFORE, Plaintiff prays for relief as follows:

(a)     A declaration that St. Louis, Mo. Mun. Code § 15.77.030 violates the First Amendment to the United States Constitution both on its face and as applied to Ms. Bernhardt;

(b)     A declaration that St. Louis, Mo. Mun. Code § 15.77.040 violates the Fourteenth Amendment Due Process Clause both facially and as applied to Ms. Bernhardt;

(c)     An injunction preventing Defendant from destroying works of art on private property without the property owner's consent pursuant to St. Louis, Mo. Mun. Code § 15.77;

(d)     An award of Ms. Bernhardt's actual damages pursuant to 17 U.S.C. 504(a)(1) for violating her right to integrity under VARA 17 U.S.C. § 106A(a)(3)(a);

(e)     An award of Ms. Bernhardt's actual damages for the tortious destruction of and injury to her property;

(f)     An award of Ms. Bernhardt's compensatory and nominal damages, reasonable costs, and attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and any other applicable provision of law; and

 (g)  Any other and further relief this Court deems just and proper.


DATED:  July 16, 2021     <u>s/ Lisa S. Hoppenjans</u>
              Lisa S. Hoppenjans, #63890 (MO)
              Tobin Raju, #5638523 (NY)
              First Amendment Clinic
              Washington University in St. Louis
              School of Law
              One Brookings Drive
              Campus Box 1120
              St. Louis, MO 63130
              Phone: (314) 935-8980
              lhoppenjans@wustl.edu
              tobinraju@wustl.edu

              **ATTORNEYS FOR PLAINTIFF**