UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KATHERINE BERNHARDT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:21-CV-00870 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| CITY OF ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF ST. LOUIS'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

COMES NOW Defendant City of St. Louis ("City"), and in support of its Motion to Dismiss, states as follows:

**INTRODUCTION**

Plaintiff Katherine Bernhardt ("Plaintiff") brings this six-count complaint against City after it painted over graffiti on her property in July 2020. City's Graffiti Ordinance ("Ordinance") declares graffiti a public nuisance, and makes it "unlawful for any person to place graffiti upon any public or private property within the City of St. Louis," and "unlawful for any person to maintain graffiti that has been placed upon…any surface within that person's control…when that graffiti is visible from a public street…." Ex. A, Ordinance 66934, codified as St. Louis, Mo. Mun. Code § 15.77.030.[1]

---

[1] A district court may take judicial notice of public records and may thus consider them on a motion to dismiss. *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003). Local ordinances are public records of which a district court may take judicial notice. *See Weed v. Jenkins*, 873 F.3d 1023, 1028 (8th Cir. 2017) (recognizing that a court may take judicial notice of local ordinances and city charters) (citing *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009) (recognizing this court may take judicial notice of public records*); Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir.1977) ("[M]atters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice.")).

Plaintiff brings four claims under 42 U.S.C. § 1983, alleging the Ordinance violates her First Amendment right to free speech and expressive conduct and Fourteenth Amendment due process rights. Plaintiff also alleges that City's action violated her rights under the Visual Arts Rights Act of 1990 (VARA), and further alleges a state law claim for tortious injury to property. For reasons set forth below, Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Although the pleading standard is liberal, the plaintiff must allege facts—not mere legal conclusions—that, if true, would support the existence of the claimed torts." *Moses.com Securities v. Comprehensive Software Systems, Inc.*, 406 F.3d. 1052, 1062 (8th Cir. 2005) (citing *Schaller Tel. Co. v. Golden Sky Systems*, 298 F.3d. 736, 740 (8th Cir. 2002)).

While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Twombly*, 550 U.S. at 545. "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to defeat a motion to dismiss." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

**ARGUMENT**

I.   **City's Ordinance as applied to Plaintiff did not violate her First and Fourteenth Amendment rights (Count II), nor is City's Ordinance facially invalid (Count I).**

The First Amendment states in part: "Congress shall make no law…abridging the freedom of speech." U.S. Const. amend. I. The First Amendment is applicable to the states, including municipal governments vested with state authority, through the Fourteenth Amendment. *Reed v. Town of Gilbert*, 576 U.S. 155, 162 (2015). While the Supreme Court has found protection for a broad array of artistic expression, including music, theater, and film, it has not provided blanket protection for all visual art. *See White v. City of Sparks*, 341 F. Supp. 2d 1129, 1138 (D. Nev. 2004) (citing *Ward v. Rock Against Racism,* 491 U.S. 781, 790 (1989) (music without regard to words); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 557-58 (1975) (theater); *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 501-02 (film)); *see also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 549-550 (STEVENS, J., dissenting in part) (ban on graffiti constitutionally permissible).

   **a. Plaintiff's as-applied challenge to City's Ordinance fails as a matter of law (Count II).**

When analyzing the constitutionality of an ordinance under the First Amendment, the Court must first determine if the ordinance is "content-neutral." *Ward,* 491 U.S. at 791. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* Because City's Ordinance serves purposes unrelated to the content of expression, it is neutral. *See* Ex. A.

If an ordinance is content-neutral, intermediate scrutiny is applied. *ILQ Invs. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir. 1994). As part of the intermediate scrutiny analysis, the Court must consider whether the regulation is narrowly tailored to serve the articulated governmental interest. *Phelps-Roper v. City of Manchester, Mo.,* 697 F.3d 678, 686 (8th Cir. 2012); *Excalibur Grp., Inc. v. City of Minneapolis,* 116 F.3d 1216, 1220 (8th Cir. 1997). To be "narrowly tailored," the regulation need not be the least restrictive means of serving a

county's content-neutral interest. *Excalibur Grp.,* 116 F.3d at 1221. Rather, "the narrow tailoring requirement is satisfied so long as the . . . [content-neutral] regulation promotes a substantial governmental interest that *would be achieved less effectively absent the regulation*." *Ward*, 491 U.S. at 798 (emphasis added); *see also Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 299 (1984) (rejecting argument that a regulation banning sleeping in a park was unconstitutional because there are less speech-restrictive alternatives that could satisfy the government interest in preserving park lands).

Courts have routinely held that public safety, aesthetics, and reducing blight are significant governmental interests. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) (safety and appearance of city are substantial government goals); *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984) (removing blight and aesthetics are significant government interests); *Jacobsen v. Harris*, 869 F.2d 1172, 1174 (8th Cir. 1989) (city regulation limiting newsrack size, type, and location served significant government interests of safety and aesthetics).

The Ordinance serves substantial governmental interests. The Ordinance was enacted by the legislative body of the City of St. Louis to "reduce blight and deterioration within the City of St. Louis," "to protect public health and safety," "to prevent the further spread of graffiti," and for "aesthetic purposes." Ex. A, at *1. Plaintiff makes no allegations about why the Ordinance was enacted or what government purpose it may serve. Even if Plaintiff took issue with City's cited interest, "it is a familiar principle of constitutional law that [courts] will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). "As the Court long ago stated: 'The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the

4

exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted.'" *Id.* (quoting *McCray v. United States*, 195 U.S. 27, 56 (1904). In *Flemming v. Nestor*, 363 U.S. 603 (1960), the Court said "that only the clearest proof could suffice to establish the unconstitutionality of a statute" on the ground that "a punitive purpose in fact lay behind the statute." *Id.* at 617. The Court stated: "Judicial inquiries into Congressional motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed." *Id.* Although the above cases dealt with Acts of Congress, the principle they announced is equally applicable to municipal ordinances. *Ambassador Books & Video v. City of Little Rock*, 20 F.3d 858, 863 (8th Cir. 1994). Because the Ordinance promotes significant governmental interests, it passes intermediate review.

The significant governmental interests of public safety, aesthetics, reducing blight, and preventing the spread of graffiti would be achieved less effectively without the Ordinance, and so, the Ordinance is narrowly tailored. The Ordinance aims to remove graffiti, calling it "obnoxious," a public nuisance, and "must be abated to avoid the detrimental impact of such graffiti on the City." It is readily apparent that without the Ordinance banning graffiti, City's goal of eliminating graffiti and its detrimental impact would be less effective, and thus, the Ordinance passes the "narrowly tailored" requirement of intermediate scrutiny. *See Clark,* 468 U.S. at 296 (finding it readily apparent that allowing overnight campers at a park in the Capital would be inimical to the significant governmental interest of maintaining parks in an attractive and intact condition, and so regulation prohibiting overnight campers was narrowly tailored).

Plaintiff asserts that the Ordinance "prohibited Ms. Bernhardt from creating and maintaining a work of art on her private property, while also entirely banning a common medium of expression." (Doc. 1 ¶ 52). But the First Amendment does not guarantee that all mediums of

expression, like graffiti, be available to Plaintiff in all places and at all times. *See Metromedia*, 453 U.S., at 549-550 (STEVENS, J., dissenting in part) (ban on graffiti constitutionally permissible even though some creators of graffiti may have no equally effective alternative means of public expression); *see also, Connection Distrib. Co. v. Reno*, 154 F.3d 281, 293 (6th Cir. 1998) ("The requirement that ample alternative channels be left available does not mean that there must be a channel where [plaintiffs] can express themselves in precisely the same manner as before the regulation."); *see also Heffron v. Int'l Soc'y For Krishna Consciousness*, 452 U.S. 640, 647 (1981) ("The First Amendment does not guarantee the right to communicate one's views at all times and places and in any manner that may be desired."); *Poulos v. New Hampshire*, 345 U.S. 395, 405 (1953) ("The principles of the First Amendment are not to be treated as a promise that everyone with opinions or beliefs to express may gather around him at any public place and at any time a group for discussion or instruction."). Hence, despite Plaintiff's allegations that the Ordinance limits her means of public expression, the Ordinance passes constitutional muster because the purposes for which it was enacted are significant governmental interests, and said interests would be achieved less effectively without the Ordinance.

Because the Ordinance is content-neutral, and passes intermediate review, the Ordinance is constitutional as applied to Plaintiff and Count II should be dismissed.

### b. Plaintiff's facial challenge to City's Ordinance fails as a matter of law (Count I).

"A facial challenge to a legislative act is . . . the most difficult challenge to mount successfully. *United States v. Salerno*, 481 U.S. 739, 745 (1987). This is because they require courts to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," and because they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent

with the Constitution." *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008). For this reason, a court must first resolve a challenge to a statute as applied before proceeding to an overbreadth issue. *Bd. of Trustees v. Fox*, 492 U.S. 469, 484-85 (1988). If the Court concludes that challenged statute is invalid as applied, "it is appropriate that [the Court] not consider the overbreadth issue" because it would constitute a "gratuitous wholesale attack upon state and federal laws. *Id.*

To prevail on a facial attack the plaintiff must demonstrate that the challenged law either "could never be applied in a valid manner" or that even though it may be validly applied, it nevertheless is so broad that it "may inhibit the constitutionally protected speech of third parties." *N.Y. State Club Ass'n v. City of N.Y.*, 487 U.S. 1, 11 (1988). Properly understood, the latter kind of facial challenge is an exception to ordinary standing requirements, and is justified only by the recognition that free expression may be inhibited almost as easily by the potential or threatened use of power as by the actual exercise of that power. *Id.* Both exceptions, however, are narrow ones: the first kind of facial challenge will not succeed unless the court finds that "every application of the statute created an impermissible risk of suppression of ideas," and the second kind of facial challenge will not succeed unless the statute is "substantially" overbroad, which requires the court to find "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.*

Here, Plaintiff fails to allege any facts which rise to the high bar of showing the Ordinance is unconstitutional on its face. While Plaintiff alleges facts as-applied to herself, she fails entirely to allege facts from which this Court could plausibly find that the Ordinance could never be applied in a valid manner, nor does Plaintiff identify or describe how the Ordinance inhibits the

7

constitutionally protected speech of third parties. Thus, Plaintiff has failed to state a facial challenge to the Ordinance, and Count I should be dismissed.

    **II.**    **The Ordinance does not violate Fourteenth Amendment due process requirements (Count III), nor did the Ordinance violate Plaintiff's Fourteenth Amendment due process rights (Count IV).**

The Fourteenth Amendment provides that "[n]o State . . . shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. Due process has both a procedural and substantive component. *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 816-17 (8th Cir. 2011). Plaintiff's allegations in Count III & IV center on City's alleged failure to follow proper procedures before painting over Plaintiff's graffiti mural, and thus, Plaintiff's due process claim arises under the procedural due process provision of the Fourteenth Amendment. To state a procedural due process claim, a plaintiff must demonstrate: (1) the existence of a constitutionally protected liberty or property interest; and (2) that the defendant deprived the plaintiff of that interest without constitutionally adequate process. *See Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Schmidt*, 655 F.3d at 817.

    **a.**    **The Ordinance affords proper procedural due process; thus, Plaintiff's facial challenge to the Ordinance fails.**

In most cases, some type of pre-deprivation notice and hearing are constitutionally required before invading a property interest. *Lunon v. Botsford*, 946 F.3d 425, 430-31 (8th Cir. 2019). But due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Due process is flexible and calls for such procedural protections as the particular situation demands. *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Accordingly, resolution of the issue whether the procedures provided are constitutionally sufficient requires analysis of the governmental and private interests that are affected. *Id.* More precisely, specific dictates of due process generally

require consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 334-35.

Plaintiff acknowledges that the Ordinance requires notification to the property owner. (Doc. 1, ¶ 35). However, Plaintiff alleges that "a one-time, non-certified notice of the 'nuisance' and deeming it received after an unspecified time period does not amount to constitutionally sufficient notice." (Doc. 1, ¶ 55). Unfortunately for Plaintiff, there is no legal support for her contentions. There is no legal authority, in this Circuit or otherwise, which suggests that more than one notice is required under due process. Similarly, there is no legal authority supporting Plaintiff's claim that notice is insufficient if not sent by certified mail. *Am. Eagle Waste Indus., LLC v. Saint Louis Cty.*, No. 4:09-CV-816 CAS, 2010 U.S. Dist. LEXIS 25588, at *16 (E.D. Mo. Mar. 18, 2010) ("the Court can find no controlling authority that would require notice, via certified mail, in order to satisfy the requirements of procedural due process under the Constitution."). Moreover, regulations that have deemed notice received after mailing have been upheld in this District before. *See Owens v. City of St. Louis*, No. 4:03CV52 RWS, 2005 U.S. Dist. LEXIS 35687, at *16 (E.D. Mo. Aug. 18, 2005) (ordinance's presumption that claimant received notice after mailing was valid even when claimant asserted she did not receive notice). Because there is no legal support for Plaintiff's assertions with respect to the Ordinance's notice provisions, Plaintiff's claims on this point fail as a matter of law.

Plaintiff's allegations are equally problematic with respect to a pre-deprivation hearing. Although a hearing is one of the hallmarks of procedural due process, it is ultimately

only required if the circumstances "demand" it. *Pesce v. City of Des Moines*, 439 F. Supp. 3d 1101, 1124-25 (S.D. Iowa 2020) (citing *Lunon*, 946 F.3d at 430 (no hearing required before dog adopted out and spayed)); *see also*, *O'Leary v. Cal. Highway Patrol*, No. 89-55747, 1991 U.S. App. LEXIS 510, at *3 (9th Cir. Jan. 14, 1991) (due process does not require a pre-towing hearing). Whether circumstances demand a hearing is determined by the *Mathews* factors - the private interest, the risk of erroneous deprivation, and the government's interest. *See Mathews*, *supra*.

The circumstances here, when analyzed under the *Mathews* framework, do not demand a pre-deprivation hearing. First, as alleged by Plaintiff, "creating and maintaining mural artwork on her private property" is the private interest affected by the official action. (Doc. 1, ¶ 50). As shown above, however, this private interest is not without its legal limits. *See* discussion *supra*, at *5-6. Second, the likelihood of City erroneously painting over legitimate art work, as opposed to vandalism, is relatively low, as demonstrated by the fact that Plaintiff fails to allege any other similar circumstances where legitimate art work was destroyed under the Ordinance. Third, as discussed above, City's interest to "reduce blight and deterioration within the City of St. Louis," "to protect public health and safety," "to prevent the further spread of graffiti," and to maintain aesthetics in the City are substantial governmental interests. The additional procedural requirements of a pre-deprivation hearing anytime City wishes to remove graffiti would be a substantial functional and administrative burden in that City would have to determine the creator of each graffiti marking and provide him with notice and hearing before being able to paint over said graffiti. On the whole, City's interests supersede Plaintiff's private interest under *Mathews*, and so, the Ordinance does not violate due process as the circumstances here do not demand a pre-deprivation hearing.

**b. City's Ordinance did not violate Plaintiff's Fourteenth Amendment due process rights.**

Plaintiff claims she "did not receive any notice prior to the Mural's removal because such notice was sent to her New York address and she was in Missouri at the time it was sent." (Doc. 1, ¶ 63). She alleges she resides in Clayton, Missouri, but also admits that she has a New York address. (Doc. 1, ¶ 15). With respect to notice, Plaintiff alleges that "Operation Brightside, an agency of the City, had sent one, non-certified letter to an address she maintains in Brooklyn, New York." (Doc. 1, ¶ 28).

"Prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). However, due process does not require actual notice, or actual receipt of notice to interested parties, nor does it require "heroic efforts" on the part of the government in effecting notice. *Dusenbery v. United States*, 534 U.S. 161, 169 (2002).

While "heroic efforts" are not required, some effort is naturally needed, depending on the circumstances, to provide notice reasonably calculated to apprise interested parties of the pendency of an action. *See Jones v. Flowers* 547 U.S. 220 (2006). Generally, when a notice is mailed to the last known address of an interested party, constitutional requirements have been satisfied. *See Schwartz v. Dey*, 665 S.W.2d 933, 935 (Mo. 1984). Cases reviewing the sufficiency of notice by mail hold that only when it is obvious, or the government otherwise has reason to believe the notice will not reach the recipient, does such fall short of the *Mennonite* standard. For example, in a case involving forfeiture proceedings against an individual's automobile, when "the State knew that

11

appellant was not at the address to which the notice was mailed and, moreover, knew also that appellant could not get to that address since he was at that very time confined in the Cook County jail," the court found that "[u]nder these circumstances, it cannot be said that the State made any effort to provide notice which was 'reasonably calculated' to apprise appellant of the pendency of the forfeiture proceedings." *Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972). Plaintiff alleges no such facts here. More recently, in *Epice Corp. v. Land Reutilization Auth.*, the district court considered the adequacy of notice regarding the City of St. Louis' demolition of a fence as a public nuisance. No. 4:07CV206 HEA, 2007 U.S. Dist. LEXIS 38041 (E.D. Mo. May 24, 2007). In that case, the City of St. Louis moved to dismiss plaintiff's due process claim, arguing that the allegations failed to establish a violation. The court denied the City's motion to dismiss, but in doing so, made clear that its ruling was based on the fact that, unlike in this case, the complaint alleged the plaintiff "was never sent *any* notification of the obligation to abate certain conditions regarding the fence. It further alleges that it did not receive notice of any abatement requirements, and that it believes that if notice was sent, it was returned to the sender." *Id* at \*10 (emphasis added).

Here, City is entitled to judgment as a matter of law because Plaintiff's complaint establishes she was afforded appropriate notice under the Due Process Clause of the Fourteenth Amendment. Plaintiff alleges City sent notice through the mail to one of her addresses informing her of City's suspicion that someone had vandalized her property with graffiti, and informing her of intended measures to correct the vandalism. (Doc. 1, ¶¶ 28, 63). The Complaint does not allege that the notice sent to Plaintiff's New York address was inadequate, only that she did not receive it. However, procedural due process does not require that Plaintiff receive notice, only that City issue notice to Plaintiff, which Plaintiff acknowledges was done here. (Doc. 1, ¶ 63). Because

Plaintiff fails to allege facts showing City's notice was inadequate, and instead, complains only that she did not receive said notice, Count IV should be dismissed.

**III.     City's Ordinance does not violate Plaintiff's right of integrity under the Visual Artists Rights Act of 1990 (Count V).**

Plaintiff's claim for relief pursuant to VARA must be dismissed because Plaintiff has failed to show that the graffiti mural in question was a work of recognized stature as required for relief under VARA.

Plaintiff alleges a violation of VARA which prohibits the intentional destruction of a work of visual art of recognized stature. 17 U.S.C. §106A(a)(3)(a). "VARA amended existing copyright law to add protections for two 'moral rights' of artists: the rights of attribution and integrity. Moral rights are distinct from general copyrights, and they rest upon the "belief that an artist in the process of creation injects his spirit into the work and that the artist's personality as well as the integrity of the work, should therefore be protected and preserved." *Cohen v. G&M Realty L.P.*, 988 F.Supp.2d 212, 215 (E.D. N.Y. 2013). These moral rights protect against the destruction of the work of art. *Id*. However, under VARA, the artist's right against destruction protects only works of "recognized stature." *Id*.

A work of recognized stature is one "viewed as meritorious" and "recognized by art experts, other members of the artistic community, or by some cross-section of society." *Cohen*, 988 F.Supp.2d at 217. The element of recognized stature is also work-specific; the inquiry does not center on whether the artist is recognized, but whether the work itself has achieved recognition and stature. *See id* (the Court's "authority under VARA is consequently limited to determining whether a particular *work* of visual art that was destroyed was one of recognized stature, and if so, what monetary damages the creator of each work is entitled to")(emphasis in original); *see also Scott v. Dixon*, 309 F. Supp. 2d 395, 400 (E.D.N.Y. 2004)("[w]hen determining whether a work

of art is of recognized stature under VARA, it is not enough that works of art authored by the plaintiff, other than the work sought to be protected, have achieved such stature. Instead, it is the artwork that is the subject of the litigation that must have acquired this stature"); *see also Carter v. Helmsley-Spear, Inc.*, 861 F.Supp. 303 (S.D.N.Y. 1994); *rev'd and vacated in part and aff'd in part*, by 71 F.3d. 77 (2d Cir. 1995) (discussing whether a specific *work* of visual art may qualify as one of recognized stature). Courts have also considered the relative transience of a work of art when considering its suitability for protection under VARA as a work of recognized stature. *See Cohen*, 988 F.Supp.2d at 213 (noting that aerosol artists "understood that the nature of the exterior aerosol art on … buildings was transient"). An indication of transience suggests that, though a work of art may be meaningful and significant to a specific moment in time, it is not an established work of recognized stature protected by VARA.

Plaintiff fails to plead facts showing the mural in question is a work of recognized stature. Plaintiff claims that she has previously sold a painting for over $100,000, that she has been featured in GQ magazine, and that "Walt Disney featured one of her spray-painted wall murals in its New York exhibition celebrating the 90th anniversary of Mickey Mouse." (Doc. 1, ¶¶ 3, 16-19). But these allegations do not support a finding that the mural at issue was of recognized stature, as required for the survival of Plaintiff's VARA claim. *Cohen*, 988 F.Supp.2d at 217. With respect to the graffiti mural itself, Plaintiff includes a picture of the mural, (doc. 1, p. 5, figure 2), and alleges, in conclusory fashion, that the mural was of "recognized stature due to its recognition on social media and in the press" (doc. 1, ¶ 69). These allegations fall woefully short of stating a claim that the mural, depicting an assortment of cultural and environmental elements, including the transient, political message of "Vote 2020," constitutes a work of recognized stature, one that is viewed as meritorious, "recognized by art experts, other members of the artistic community, or by

14

some cross-section of society" as having merit and intrinsic worth as a lasting work of art. *Cohen*, 988 F.Supp.2d at 217. For this reason, Count V of Plaintiff's Complaint should be dismissed for failing to state a claim under VARA.

> **IV.** **Plaintiff's state law claim for tortious injury to property is barred against City by sovereign immunity as a matter of law (Count VI).**

Plaintiff alleges in Count VI that City failed to exercise reasonable care in trespassing on Plaintiff's property and destroying her work of art. (Doc. 1, ¶¶ 72-81). This claim must be dismissed because Plaintiff does not provide any facts demonstrating that City's right to sovereign immunity has been waived in this matter.

Under Missouri law, sovereign immunity renders public entities "immune from suit for their negligent acts unless the General Assembly has expressly waived such immunity." *Phelps v. City of Kansas City,* 371 S.W.3d 909, 912 (Mo. App. W.D. 2012). As a general rule, City is "entitled to sovereign immunity." *Richardson v. City of St. Louis*, 293 S.W.3d 133, 136 (Mo. App. E.D. 2009). There are few exceptions to sovereign immunity. Express waivers of sovereign immunity arise where a person sustains injuries (1) directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or (2) caused by a dangerous condition of a public entity's property." § 537.600 RSMo. Municipalities also may waive sovereign immunity under § 537.610 RSMo. by purchasing a liability insurance policy from an insurance company, but only to the extent of the insurance policy purchased. *State ex rel. Bd. of Trustees of City of N. Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. 1992). In addition, municipalities are entitled to sovereign immunity when engaged in "governmental" functions, but not "proprietary" functions. *Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. banc 2008).

Notably, sovereign immunity is not an affirmative defense; rather, the plaintiff bears the burden of pleading specific facts giving rise to an exception to sovereign immunity when suing a public entity. *Townsend v. Eastern Chemical Waste Systems*, 234 S.W.3d 452, 470 (Mo. Ct. App. W.D. 2007); *Newsome v. Kan. City*, 520 S.W.3d 769. 775-76 (Mo. 2017). In order to state a claim, plaintiff must plead specific facts showing that the claim comes within an exception to sovereign immunity. *A.F. v. Hazelwood Sch. Dist.*, 491 S.W.3d 628, 635 (Mo. App. 2016) (finding plaintiff's allegation in pleading that government's "insurance covered this 'incident' is conclusory, and the allegation that the coverage therefore waived sovereign immunity is a conclusion of law"); *see also Epps v. City of Pine Lawn*, 353 F.3d588, 594 (8th Cir. 2003) (citing *Burke v. City of St. Louis*, 349 S.W.2d 930 (Mo. 1961)).

Plaintiff alleges that City is not entitled to sovereign immunity because the "city of St. Louis has obtained self-insurance from the Public Facilities Protection Corporation ("PFPC"). The 2019 Comprehensive Annual Financial Report of the City of St. Louis states that the 'PFPC' is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters." (Doc. 1, ¶ 83). Similarly, Plaintiff alleges that City "has waived sovereign immunity by insuring itself through Operation Brightside, Inc.'s policy," and includes a copy of the City Board Bill establishing Operation Brightside. (Doc. 1, ¶ 85). Additionally, Plaintiff alleges City was engaged in a proprietary function when it destroyed the mural, and is therefore not immune from suit. (Doc. 1, ¶ 87).

Mo. Rev. Stat. §537.610 provides the following explanation of the mechanics of an insurance-related waiver of sovereign immunity: "Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes

covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state." Therefore, pursuant to §537.610, when a public entity purchases liability insurance or lawfully adopts a self-insurance plan to cover tort claims, sovereign immunity is waived only to the extent of the amount provided and for the specific purposes set forth in the insurance plan. *Langley v. Curators of Univ. of Missouri*, 73 S.W.3d 808, 811 (Mo. App. 2002). Whether sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's policy. *Hummel v. St. Charles City R-3 Sch. Dist.*, 1114, S.W.3d 282, 284 (Mo. App. 2003).

Pleading the existence of a "self-insurance program" supported by a reference to City's 2019 Comprehensive Annual Report, which makes mere note of the PFPC, is insufficient to establish a waiver of sovereign immunity for Plaintiff's claim of tortious injury to property. Plaintiff has not pled any facts supporting the conclusion that an insurance plan was purchased, or that a self-insurance plan was duly adopted by the governing body of the City for Plaintiff's claim of tortious injury to property. "There are a number of provisions that are essential to an insurance policy. The policy must identify: the 'insured,' the individual or entity with the interest at risk; the 'coverage' or 'insuring agreement,' the subject matter and the contingency insured against; the 'period,' the dates prescribing the duration of the risk or contingency insured against; and the 'limits,' the amount the insurer is liable to pay for any given risk up to a specified amount." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007). Because Plaintiff has not identified any insurance policy, nor has she alleged anything other than the conclusion that an unidentified policy covers the claims in this case, Count VI should be dismissed. *See Perkins v. Derrick Frye*, No. 20CV1433 HEA, 2020 U.S. Dist. LEXIS 232334 (E.D. Mo. Dec. 10, 2020).

17

Similarly, Plaintiff has not pled the existence of any City ordinance establishing a self-insurance plan that would cover Plaintiff's claim of tortious injury to property. The only existing self-insurance plan that was duly adopted by the governing body of the City of St. Louis is provided in City Ordinance 57821, codified as St. Louis, Mo. Mun. Code § 4.12.030. Exhibit B. That plan provides coverage only for physical injuries to persons, not injuries to property as Plaintiff alleges here, arising out of the negligent operation of a motor vehicle or from a dangerous condition of public property. Those two categories of claims are already specifically waived by state statue. RSMo. §537.600. As such, Plaintiff fails to allege the existence of any insurance plan which would cover her claim for tortious injury to property, and so, City is entitled to sovereign immunity and Count VI should be dismissed.

Similarly, Plaintiff's allegations fail to establish that City's sovereign immunity has been waived because of its relationship with Operation Brightside, Inc., and because Operation Brightside, Inc., is presumed to have insurance coverage. Here again, Plaintiff fails to show the existence of an actual policy of insurance, and instead offers the conclusory allegation that the City is covered by Operation Brightside's presumably existing insurance. Plaintiff alleges that a City Board Bill provides that City officials were authorized to execute and deliver a cooperation agreement with Operation Brightside, Inc., "substantially in the form" of an exhibit attached to the Board Bill, and that this exhibit, the proposed contract between Operation Brightside and the City, provides that Operation Brightside was required to maintain "any existing liability insurance policies" and add the City as additional insureds. (Doc. 1-2, p. 3). Plaintiff does not plead specific facts showing the existence of an actual contract between the City and Operation Brightside, Inc. or the existence of an insurance policy covering Operation Brightside, Inc, or that said insurance policy covers Plaintiff's claim for tortious injury to property. This is another instance of deficient

18

and conclusory pleading that cannot succeed at showing a waiver of sovereign immunity. *See Perkins v. Derrick Frye*, No. 20CV1433 HEA, 2020 U.S. Dist. LEXIS 232334 (E.D. Mo. Dec. 10, 2020).

Additionally, Plaintiff's allegations that City's actions in painting over the graffiti mural constitute the performance of a propriety function are not supported by law, and do not establish a waiver of sovereign immunity. As Plaintiff points out, City is not shielded by sovereign immunity when performing proprietary rather than governmental functions. *Crouch v. City of Kansas City*, 444 S.W.3d 517, 521 (Mo. App. 2014). Governmental functions are performed for the common good of all. Proprietary functions entail acts that are performed for the special benefit or profit of the municipality. *State ex rel. City of Lee's Summit v. Garrett*, 568 S.W.3d 515, 519 (Mo. App. 2019) (internal citations omitted). When considering whether a function is governmental or proprietary, the court does "not assess the particular performance of a specific event but rather the general nature of the activity being performed." *State ex rel. City of Lee's Summit v. Garrett*, 568 S.W.3d 515, 521 (Mo. App. 2019). Additionally, the fact that the municipality may charge a fee for the public service "does not transform a governmental function into a proprietary one." *Id*.

Specific to Plaintiff's allegations of City performing a proprietary function, Plaintiff alleges only that City "destroyed the Mural pursuant to Defendant's broad prohibition on 'graffiti,' codified at St. Louis, Mo. Mun. Code §15.77 *et seq.* (the 'Graffiti Prohibition')." (Doc. 1, ¶ 4). However, "[i]t is well established that enforcement of ordinances is a governmental function, not a proprietary function…." *State ex rel. City of Lee's Summit v. Garrett*, 568 S.W.3d 515, 521 (Mo. App. 2019) (*quoting State ex rel. City of Nev. v. Bickel*, 267 S.W.3d 780, 782 (Mo. App. 2008)). Thus, Plaintiff's allegations that the City's action in enforcing the Ordinance is a proprietary

19

function, rather than a governmental function, is not supported by law, and so Count VI should be dismissed as City is entitled to sovereign immunity.

**CONCLUSION**

Because Plaintiff fails to state a claim under the First Amendment, Fourteenth Amendment, VARA, and Missouri's tortious injury to property, Plaintiff's claims against City should be dismissed.

Respectfully submitted,
MATT MOAK
CITY COUNSELOR

/s/ Abby Duncan
Abby Duncan 67766(MO)
Associate City Counselor
duncana@stlouis-mo.gov
Katherine Dierker 70025(MO)
Assistant City Counselor
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956

*Attorneys for Defendant City*

**CERTIFICATE OF SERVICE**

I hereby certify the foregoing was electronically filed on September 17, 2021, with the Court for service by means of Notice of Electronic Filing upon all attorneys of record.

/s/ Abby Duncan

20